STUMPF CRADDOCK
MASSEY FARRIMOND
Henry J. Fasthoff, IV
(NY Registration No. 4449419)
Pending Application to Appear *Pro Hac Vice*
1400 Post Oak Blvd., 4th Floor
Houston, Texas 77056
713-871-0919

DAVIS & GILBERT LLP
Marc J. Rachman (MR 4094)
Ina B. Scher (IS 2841)
1740 Broadway
New York, New York 10019
(212) 468-4800

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
THE ROYALTY NETWORK INC.,

                Plaintiff,                            Case No. 07-CV-3067 (RMB)

       v.

COLUMBIA RECORDING CORPORATION,        **MEMORANDUM OF**
SONY BMG MUSIC ENTERTAINMENT,            **DEFENDANTS IN RESPONSE**
Individually and d/b/a SONY BMG SALES          **TO SHOW CAUSE ORDER**
ENTERPRISE, BEYONCE GISSELLE
KNOWLES, individually and d/b/a B-DAY        **ECF CASE**
PUBLISHING, and EMI APRIL MUSIC, INC.,

                Defendants.
-------------------------------------------------------X

      Defendants Beyonce Knowles, Sony BMG Music Entertainment (incorrectly sued as Columbia Recording Corporation), and EMI April Music, Inc., respectfully respond to the Court's April 17, 2007 show cause order as follows:

1

# I. <u>INTRODUCTION</u>

1. Plaintiff, The Royalty Network, Inc. ("TRN"), alleges that a license was not obtained prior to the release of an album and DVD embodying Beyoncé Knowles' re-recording of a musical work entitled "I'm Kissing You" in which TRN claims rights. As an artist, Ms. Knowles is not in any way involved in the process of obtaining licenses.

2. Although couched as an intentional effort to violate TRN's rights, appropriate steps were taken to license the composition upon which TRN's claim is based. A license was negotiated and, through miscommunication, was not finalized. Since then, Defendants have voluntarily taken the actions requested by TRN in its request for a preliminary injunction. As a result, TRN's request for preliminary injunction is largely moot. The only remaining issue is whether a mandatory injunction should issue requiring the recall of all outstanding copies of the subject album and DVD. Because TRN can be compensated with monetary damages, and because the other factors that should be considered by the Court otherwise favor Defendants, TRN's request for injunctive relief should thus be denied.[1]

# II. <u>RESPONSE</u>

3. TRN asserts the Court should consider four factors in determining whether to issue a recall order (i) the defendant's good faith or bad faith, (ii) the likelihood of diversion of customers from plaintiff to defendant, (iii) the extent of the burden on defendant in complying with a recall order, and (iv) the probability that the plaintiff would benefit from such an order. Pl. Mem. at 7 (citing *Cherry River Music v. Scimitar Entertainment, Inc.*, 38 F.Supp.2d 310, 317 (S.D.N.Y. 1999)). Consideration of these factors weighs against the issuance of a recall order.

---

1 The parties are actively engaged in settlement negotiations.

### THE DEFENDANTS' GOOD FAITH

4. In its request for preliminary relief TRN seeks an order enjoining further (i) manufacturing, selling, distributing, advertising of the *B'Day Deluxe Edition* albums, DVD, and digital downloads embodying the re-recorded song, a musical work entitled "Still In Love (Kissing You")" (the "Song"); and (ii) public performances of the Song. Sony BMG has stopped manufacturing, selling, distributing, and advertising the album and DVD embodying the Song in all formats, including, without limitation, digital downloads.[2] Ms. Knowles is not publicly performing the Song and Defendants have not authorized third parties to publicly perform the Song. TRN's request for relief as to these issues is moot.[3] The conduct of the Defendants in this regard demonstrates their good faith. *See Cherry River Music,* 38 F.Supp.2d at 317.

### THERE IS NO LIKELIHOOD THAT DEFENDANTS WILL DIVERT CUSTOMERS FROM PLAINTIFF

5. TRN offers no argument as to why, or how, the failure to issue a recall order would result in Defendants diverting customers from TRN. No such circumstance could exist. If anything, given her stature in the music industry and popular culture, Ms. Knowles' re-recording of the Song may cause customers to seek out the original version of the song, thereby driving new customers to TRN and the artist it represents.

---

2 As an artist, Ms. Knowles is not involved in the process of manufacturing, selling, advertising or distributing albums, DVDs, or digital downloads.

3 Neither Ms. Knowles nor EMI claims rights in or to the Song. Def. Ex. A, Mohr Aff.; Def. Ex. B, Briggs Aff.

**COMPLYING WITH A RECALL ORDER WOULD BE UNDULY BURDENSOME**

6.    The issuance of a recall order would be unduly burdensome on Defendants. Recall orders are not just very unusual, they are also typically ineffective. To be effective, they require a concerted effort on the part of many people in Sony BMG's headquarters and repeated follow-up by a large part of Sony BMG's sales force.

**TRN WOULD BENEFIT IF A RECALL ORDER IS NOT ISSUED**

7.    A recall order would not benefit TRN. TRN has demanded $1,000,000.00 in claimed damages, a sum that exceeds the maximum it could recover under the statutory damages provision of 17 U.S.C. § 504. TRN thus intends to attempt to prove actual damages and profits. A determination of profits is based in part on the number of albums and DVDs that are sold. Although the amount of damages sought by TRN is unrealistic factually and legally, a recall order would do more harm than good to TRN given that its claim for profits would be based on the number of units sold.

**THE BALANCE OF THE EQUITIES DOES NOT FAVOR A RECALL ORDER**

8.    TRN has an adequate remedy at law for the copies of the album and DVD that have been sold. Through a combination of document review, mathematical calculations and testimony from fact and expert witnesses, it is possible to formulate a position on the amount of monetary damages and profits, if any, attributable to the Song. *See, e.g., Caffey v. Cook*, 409 F.Supp.2d 484, 505-506 (S.D.N.Y. 2006); *Jarvis v. A & M Records*, 827 F.Supp. 282, 294 (D.N.J. 1993). This truth is underscored by TRN's request for monetary damages in its complaint: TRN alleges that it is "at present" unable to determine the full extent of its alleged monetary damages, implying that through discovery it will be able to obtain the information it needs to present its case for monetary damages. Pl. First Am. Compl. at ¶¶ 38-39. Injunctive relief should not be granted when monetary damages

can adequately compensate a plaintiff. *See, e.g., Abend v. MCA, Inc.*, 863 F.2d 1465, (9th Cir. 1988), *aff'd*, 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990).

9. Other factors militate against a recall. There are two versions of the album, one that contains 23 songs and another that contains 24, and one version of the DVD that contains 13 videos. There is no way to recall *just* the Song; a recall order would require a recall of the albums and DVD in their entirety, thereby negatively impacting the 22 (or 23) other wholly unrelated songs on the albums as well as the 12 other wholly unrelated videos on the DVD. The Song has not been released as a single, is not scheduled for release as a single, and is not slotted for radio airplay. The commercial reality is that the Song is not critical, or even instrumental, to the success of the album or DVD. *Cf., ABKCO Music v. Harrisongs Music, Ltd.*, 508 F.Supp. 798 (S.D.N.Y. 1981), *as modified*, 722 F.2d 988 (2d Cir. 1988) ("Common sense dictates that a hit song contributes more to the sale of a record than does a less popular song."). Recalling both versions of the album and the DVD due to the inclusion of a single song for which a license had been negotiated but not finalized—as illustrated by the allegations in ¶ 24 of TRN's complaint—would not be in the best interest of *any* of the parties.

10. Moreover, third parties would be unfairly penalized by a recall order. Grammy Award-winning recording artist Shakira appears with Ms. Knowles on the hit song entitled "Beautiful Liar" embodied on the *B'Day Deluxe Edition* album and DVD. It is this song which is garnering much of the attention and driving current sales of the album and DVD. *See Harrisongs*, 508 F.Supp. 798 ("Common sense dictates that a hit song contributes more to the sale of a record than does a less popular song."). Shakira does not appear on the Song at issue. A recall order would unfairly penalize Shakira and other rights holders in other works embodied on the album and DVD.

11. To avoid any potential waiver argument, Defendants allege that TRN fails to state a claim for which relief may be granted.

### III. CONCLUSION

12. It would be unfair to require a recall of the subject albums and DVD in light of the fact that (i) Defendants have taken the action required to moot all other aspects of TRN's request for preliminary relief, and (ii) TRN has acknowledged that it can be compensated adequately with monetary damages, and (iii) the harm to Defendants and third parties outweighs the potential harm to TRN if a recall is issued. Defendants respectfully request that TRN's request for preliminary injunction be denied.

Respectfully submitted,

STUMPF CRADDOCK MASSEY FARRIMOND

By: _____ for

Henry J. Fasthoff, IV
(NY Registration No. 4449419)
Application Pending for Admission *Pro Hac Vice*
1400 Post Oak Blvd., 4th Floor
Houston, Texas 77056
713-871-0919
*Lead Counsel for Beyoncé Knowles, Sony BMG Music Entertainment (incorrectly sued as Columbia Recording Corporation and Sony BMG Sales Enterprise), and EMI April Music, Inc.*

DAVIS & GILBERT LLP

By: /s/ Ina B. Scher
Marc J. Rachman (MR 4094)
Ina B. Scher (IS 2841)
1740 Broadway
New York, New York 10019
(212) 468-4800
*Local Counsel for Beyoncé Knowles, Sony BMG Music Entertainment (incorrectly sued as Columbia Recording Corporation and Sony BMG Sales Enterprise), and EMI April Music, Inc.*